Filed 2/25/22  In re Frank O. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re FRANK O. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>VERONICA C.,<br><br>Defendant and Appellant. | E077747<br><br>(Super.Ct.Nos. J290033, J290034 & J290035)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed.

Elizabeth Klippi, under appointment by the Court of Appeal, for Defendant and Appellant.

Steven O'Neill, Interim County Counsel, and Svetlana Kauper, Deputy County Counsel, for Plaintiff and Respondent.

1

I.

INTRODUCTION

In this dependency case, the juvenile court found jurisdiction over the three children based upon allegations that the parents had substance abuse issues; failed to provide them with adequate care and shelter; and failed to provide them with necessary medical and dental treatment. Appellant, Veronica C. (Mother), appeals from the jurisdictional and dispositional orders. She challenges only the court's finding that she had a current substance abuse problem that placed the children at risk of harm within the meaning of Welfare and Institutions Code section 300, subdivision (b)(1).[1] Mother also challenges a dispositional order requiring her to participate in an outpatient substance abuse program. Father did not separately appeal.

We exercise our discretion to consider Mother's challenge. We disagree with Mother and conclude that substantial evidence supports the juvenile court's finding she had a current substance abuse problem and that there was a substantial risk of harm to the children. We also disagree that the juvenile court abused its discretion when it ordered Mother to participate in a drug treatment program. For the reasons below, we affirm the judgment.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

II.

BACKGROUND

The family came to the attention of San Bernardino County Children and Family Services (CFS) after a referral alleging the children, 13-month-old Frank O., four-year-old Elena O., and five-year-old Mario O., were living in dirty living conditions and were not properly supervised due to Mother using illegal substances. The reporting party stated that Mother had a history of methamphetamine use but did not know when she had last used.

According to the referral, the maternal grandmother, who lived in the home, found a glass pipe in Mother's hand while she slept. The incident occurred within a week of the referral, but the exact date was unknown. The maternal grandmother reported the children were running around the home when she saw the pipe in Mother's hand.

The social worker made an unannounced visit to Mother's home on July 27, 2021, but Mother denied her entry to observe and speak to the children. Mother admitted that the last time she used substances was when she gave birth to Frank O.; however, she said she did not know what substances she used. Mother reported that she saw the children running around with Father's vape pen and she took it away. She did not recall when this occurred. The social worker noticed that Mother had sores and scabs on her face and arms. When asked to take a drug test, Mother provided various reasons why she could not do so.

The social worker visited Mother's home again the following day. Upon entering the home, the social worker noticed an overwhelming foul odor. She observed

cockroaches on the floor and around the entire home. The social worker saw the room where the children and parents slept and noticed dirty diapers and trash on the floor and cockroaches on the bed. Frank O. was crawling on the filthy floor and touching everything in the home. Outside the home, saws, hammers, and tattoo equipment were strewn about and within access of the children.

The social worker spoke with Father, who stated he did not live in the home and did not have a home where the children could stay. He reported that he visited the children at the home in order to take care of them.

The social worker attempted to create a safety plan with Mother; however, Mother refused to have the children stay with other family members while the home was being cleaned. The social worker told both parents about the need to drug test.

When the social worker tried to interview Mario O., she was unable to do so because the child was nonverbal and appeared to be delayed. Mother refused to wake Elena O. for the interview. Mother could not recall the last time she took the children to see a doctor.

The social worker interviewed a maternal great-uncle who said he was concerned about the parents' substance abuse and the condition of the home. He reported that the home was infested with cockroaches and the parents did not clean the home. He further shared his concern about the parents' neglect of the children and failure to provide them with medical care.

On July 29, 2021, the parents did not appear for their drug tests. On that date, a public health nurse (PHN) examined the children. The PHN observed Mario O., to have

4

gross dental decay and definite developmental delays. Additionally, the child was nonverbal and the PHN believed he was possibly on the autism spectrum. He was not potty trained. The PHN noted that Elena O. appeared to have gross dental decay and said only a few words. The child understood language, was able to express emotions, and could respond to directions. The PHN observed that Frank O. had red, circular bumps on his body. The social worker then took Frank O. to the Loma Linda University Medical Center emergency room, and he was diagnosed with hemangioma.[2]

That day, CFS temporarily detained the children pursuant to a warrant. CFS filed a section 300 petition on behalf of the children under section 300, subdivision (b)(1), alleging medical neglect, dental neglect, inadequate living conditions, and substance abuse by Mother and Father.

At the detention hearing, the court ordered the children detained. It ordered the parents to drug test and advised them that if they failed to test, it would be considered a positive result. Mother said she understood. It also ordered the parents to drug test that day.

When CFS interviewed Mother for its jurisdiction and disposition report, she denied that she used illegal substances. She denied experimenting with drugs but reported a history of marijuana use. She admitted she tested positive for

---

[2] A hemangioma is a bright red birthmark that appears either at birth or within the first two weeks of life. It is comprised of extra blood vessels in the skin and commonly appears on the face, scalp, chest, or back. Treatment is not usually required as the birthmark usually fades over time. (http://www.mayoclinic.org/diseases-conditions/hemanigioma/symptoms-causes/syc-20352334 (as of February 22, 2022).

5

methamphetamine at the time of Mario O.'s birth in 2015. Mother explained that because she tested positive at the child's birth, a CFS referral was generated, but it was closed because the child did not test positive.

Mother had no explanation for why the children had not seen a dentist. She acknowledged that Mario O. banged his head, but said he did this when he was frustrated and his pediatrician told her not to worry about it and to ignore it. She recalled that two years earlier Mario O. visited a pediatrician who referred the child to speech therapy. Mother said she stopped taking the child to speech therapy because he would not interact with the service provider. She was not concerned with Mario O.'s delays and believed he was just "taking a little longer to talk." She also acknowledged her son was not yet potty trained and wore pull-ups. She said she let him do things on his own time. Similarly, Mother had no concerns about Elena O. and explained that the child preferred not to speak to strangers. Mother said she did not take the children for routine well-child examinations because she did not want her children immunized, although she acknowledged the children were vaccinated against Hepatitis B after their births.

Mother submitted to a drug test on August 3, 2021. The results were negative. However, she had failed to appear for a drug test the previous day. When the social worker asked Mother to test on August 12, 2021, Mother initially said she did not have a valid identification card. When the social worker explained that a temporary identification card would be issued to her, Mother then questioned whether the drug test was court ordered. The social worker provided Mother with a list of specimen collection sites and issued a drug testing color. Later that same day, Mother sent the social worker a

text message indicating she was having difficulty testing.  The results of the drug test were pending at the time of the jurisdictional hearing.

In the jurisdiction/disposition report, the social worker noted examples of when Mother responded inappropriately to questioning.  When asked about the condition of the home, Mother laughed, stating, "We were cleaning up."  She also laughed when the social worker asked about Mario O.'s lack of toilet training.  The social worker recommended that Mother participate in a psychological evaluation due to exhibiting a developmental delay.

Father was interviewed and acknowledged a history of marijuana use but claimed he stopped using when the children were removed.  He tested negative for all substances in early August 2021, but tested positive for methamphetamines in mid-August 2021.

Father acknowledged the home had a "roach issue," and he was trying to get it under control.  He said it was Mother's responsibility to make sure the children got necessary medical treatment.

At the jurisdiction and disposition hearing, Mother's counsel requested that the substance abuse allegation be "amended to indicate a history of substance abuse." Specifically, counsel stated that Mother had informed him that the last time she used was "during the birth of [Mario O.], about five years ago, where she and the child test[ed] positive."  As to disposition, counsel argued that a substance abuse treatment program was appropriate "if [Mother] should test positive."

The court dismissed the b-4 allegation alleging Mother had a developmental disability and sustained the remaining counts.  It declared the children to be dependents

7

of the juvenile court and found by clear and convincing evidence that there was a risk to the children's health and safety if they were to be returned to Mother. The court ordered Mother to participate in family reunification services, including an outpatient substance abuse program.

## III.

## DISCUSSION

Mother raises two issues on appeal. First, she contends that substantial evidence did not support the juvenile court's finding set forth in count b-5 of the petition that she had a current substance abuse problem. Second, Mother asserts the dispositional order requiring her to participate in an outpatient substance abuse treatment program was an abuse of discretion. Because Mother does not address the remaining two allegations that were sustained in the petition pertaining to her, and she does not challenge the allegations involving Father, we first address whether her claim is justiciable.

### A. *Justiciability Doctrine*

The juvenile court assumed jurisdiction based on findings against Mother and Father, but Father has not appealed, and Mother does not challenge the jurisdictional findings concerning him. Mother also challenges only one of the three sustained allegations pertaining to her. Under the justiciability doctrine, courts generally do not act upon or decide moot questions or abstract propositions, nor do they issue advisory opinions. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1490-1491.) "An important requirement for justiciability is the availability of 'effective' relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal

8

status." (*Id.* at p. 1490.) "For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence," or is unchallenged. (*Id.* at p. 1492.)

On the other hand, an exception to this general rule has been recognized: "[W]e generally will exercise our discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction' [citation]." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763 (*Drake M.*).)

Here, because the challenged b-5 jurisdictional finding is also the basis for the dispositional order that Mother challenges on appeal, and because the finding could impact the current or future dependency proceedings at a point when they are insulated from appellate review, we will exercise our discretion to review the juvenile court's jurisdictional finding against Mother. (See *In re Drake M.*, *supra*, 211 Cal.App.4th at p. 763 [exercising discretion to review jurisdictional findings for same reasons].)

B. *Section 300, Subdivision (b) Finding*

Mother argues there was insufficient evidence to support that she was a current substance abuser. We disagree.

The purpose of section 300 "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and

9

emotional well-being of children who are at risk of that harm." (§ 300.2.) Additionally, the Legislature has declared, "[t]he provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child." (§ 300.2.)

Section 300, subdivision (b)(1), authorizes a juvenile court to assert jurisdiction over a child if the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of the child's parent . . . to adequately supervise or protect the child." The burden is on the agency to demonstrate the following three elements by a preponderance of the evidence: "(1) neglectful conduct, failure, or inability by the parent; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness." (*In re L.W.* (2019) 32 Cal.App.5th 840, 848.)

Although section 300 generally requires proof the child is subject to the defined risk of harm at the time of the jurisdictional hearing (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1394), the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. (*In re N.M.* (2011) 197 Cal.App.4th 159, 165.) The court may consider past events in deciding whether a child currently needs the court's protection. (*Ibid*.) A parent's " '[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue." (*In re S.O.* (2002) 103 Cal.App.4th 453, 461.)

A parent's drug use alone cannot support juvenile court jurisdiction. (*In re Drake M.*, *supra*, 211 Cal.App.4th at p. 765.) Jurisdiction must instead be based on a

parent's substance abuse that results in a risk of serious physical harm to the child. (*In re J.A.* (2020) 47 Cal.App.5th 1036, 1046.)

" 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.]" ' " (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

Contrary to Mother's position that there was insufficient evidence of current substance abuse, the record supports the court's finding. First, Mother admitted historical drug use that endangered her children. She used methamphetamine during the late stages of her pregnancy with Mario O., as she acknowledged she tested positive for the substance when her son was born in 2015. Likewise, Mother admitted to using drugs when she gave birth to her youngest son, Frank O., who was 13 months old at the time CFS intervened. That means Mother exposed two children to drugs in-utero in the span of six years. Mother also admitted a history of marijuana use.

Witnesses supported more recent drug use. Both the maternal grandmother and maternal great-uncle expressed concern about Mother's substance abuse, and the maternal great-uncle's concerns about the condition of Mother's home and her neglect of

11

the children were corroborated by CFS. The maternal grandmother saw Mother asleep with a glass pipe in her hand a week before CFS became involved. In fact, the state of Mother's home was so unsuitable that it posed a risk to all the children in the home, and especially the youngest child. Mother had also neglected the children's medical, dental, and developmental needs. This evidence supports a conclusion that Mother's substance abuse was entrenched and unresolved, supporting the juvenile court's finding that she had a current substance abuse problem.

If Mother had willingly tested negative throughout CFS's involvement, she would be in a better position to deny recent substance abuse. But instead her resistance to drug testing provided an additional reason to conclude that Mother was abusing drugs. She was evasive in avoiding some drug tests, and she missed two tests. By the time of the jurisdictional and dispositional hearing, Mother had not engaged in any services or made any efforts toward resolving her issues.

Substantial evidence also supports the court's finding of risk. The children were all under the age of six at the time of the jurisdictional hearing, so they were children of tender years. (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1219 (*Christopher R.*) [children six years old or younger are considered children of " 'tender years' "].) In dependency law, the so-called tender years presumption provides that a child young enough to need constant supervision faces an " 'inherent' " and substantial risk of serious physical harm if her caregiving parent is abusing mind-altering drugs that render the parent less capable of providing the requisite supervision. (*Drake M.*, *supra*, 211 Cal.App.4th at pp. 766-767.) Where that presumption applies, as it does here, the

12

Department "need[] only . . . produce sufficient evidence that [the parent] was a substance abuser in order for dependency jurisdiction to be properly found." (*Id.* at p. 767.) Also, the evidence that Mother had an unresolved substance abuse problem, refused to admit the extent of her problem, tried to evade testing, and had already neglected the needs of her children by subjecting them to unsafe living conditions, medical and dental neglect, is sufficient to support the jurisdictional finding.

In both the opening brief and reply brief, Mother disputes that she tested positive at the time of Frank O.'s birth and claims that she actually "clarified" that her last drug use was when she gave birth to Mario O., in 2015. To support this contention, Mother refers to her interview for the jurisdiction and disposition report wherein she "denied" using substances as well as her attorney's request that the juvenile court amend the b-5 allegation to reflect only past substance abuse. She argues that the evidence in the record supports her "version of events" because the detention report corroborated her report that the 2015 referral was closed as "unfounded." We disagree.

While Mother denied substance abuse when interviewed for the jurisdiction and disposition report, she did not recant her earlier statement that her last drug use was when she gave birth to Frank O. Rather, the first time the court was made aware that Mother was retracting this statement was when her attorney informed the court that Mother told him that she last used drugs when Mario O. was born in 2015 and asked that the substance abuse allegation be amended to reflect past substance abuse. However, this statement by counsel was not a formal offer of proof or stipulated testimony, and Mother

13

did not testify at the hearing. Counsel's statement constituted legal argument and was not evidence. The juvenile court was free to disregard it.

Additionally, as a reviewing court, it is not our role to accept Mother's "version of events." We are guided by the standard of review, which in this case requires us to review the record in the light most favorable to the challenged order and resolve conflicts in the evidence in favor of that order. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 450-451.) Weighing evidence, assessing credibility, and resolving conflicts in evidence and the inferences to be drawn from the evidence—which Mother is requesting us to do— "are the domain of the trial court, not the reviewing court." (*Ibid*.) This means the juvenile court was free to reject Mother's subsequent implied denial of having used drugs at the time of Frank O.'s birth.

The cases on which Mother relies, in which the court determined the drug use to be insufficient to support jurisdiction, are distinguishable. In *In re J.A., supra*, 47 Cal.App.5th at p. 1047, the mother admitted using edible marijuana while pregnant, "to address her pregnancy symptoms, after having researched that it was a relatively safe alternative," but she stopped using as soon as the agency told her to. Her drug tests supported this. (*Ibid.*) In this case, in contrast, Mother used methamphetamine during one of her pregnancies (*ibid*. at p. 1049; see § 355.1 [application of the statutory presumption when a child is diagnosed as being born under the influence of a dangerous drug, such as methamphetamine]), displayed reluctance to drug test, missed two tests, and triggered at least two family members to be concerned about her drug abuse.

14

*In re Rebecca C.* (2014) 228 Cal.App.4th 720 involved a finding that a mother's drug abuse did not cause a substantial risk of harm to a 13-year-old daughter. (*Id.* at p. 727.) In this case, substantial evidence supported the juvenile court's finding that Mother has a substance abuse problem and her substance abuse caused or was causing a substantial risk of harm to the children. (*Drake M.*, *supra*, 211 Cal.App.4th at pp. 766-767.)

In *In re Ma.V.* (2021) 64 Cal.App.5th 11, the mother acknowledged she used marijuana to help her posttraumatic stress disorder symptoms. (*Id.* at p. 23.) By the time of the jurisdictional hearing, which was 10 months after SSA became involved, the mother had a valid prescription to use marijuana and the agency was no longer concerned about it. (*Ibid.*) Therefore, the Court of Appeal found the evidence did not demonstrate a current risk to the children. (*Ibid.*) In this case, on the other hand, there was no indication that Mother's substance abuse was no longer a concern to the agency. She has been evasive and uncooperative about drug testing, and there was substantial evidence of a current risk to the children. Not only does the tender years doctrine presumption apply because the children were under the age of six at the time of the hearing (*Christopher R.*, *supra*, 225 Cal.App.4th at p. 1220), but Mother has consistently neglected the children's medical, developmental, and dental needs resulting in severe dental decay and developmental delays.

We view Mother's behavior as closer to that of the mother in *In re Christopher R.*, who was dishonest about using cocaine during her pregnancy. And, as here, she argued on appeal that "the evidence of her sporadic drug use was insufficient to support the

15

findings she was a current substance abuser and [that her other three children] were at substantial risk of serious physical harm justifying the exercise of the juvenile court's jurisdiction." (*In re Christopher R.*, *supra*, 225 Cal.App.4th at p. 1215.) The appellate court rejected this argument, reasoning the juvenile court was free to disbelieve her claim of sporadic drug use, based on her conduct during the case. The court found that the mother's use of cocaine while in the final stage of her pregnancy, combined with her admitted use of the drug in the past and her failure to consistently test or enroll in a drug abuse program, justified the juvenile court's exercise of dependency jurisdiction. (*Id.* at pp. 1218-1219.) Additionally, because the children were six years old or younger at the time of the jurisdictional hearing, the Department needed to produce only sufficient evidence that the mother was a substance abuser. (*Id.* at pp. 1219-1220.)

Similarly, in this case, the juvenile court was free to disbelieve Mother's claim of mere historical drug abuse. Mother used drugs during the final stages of her pregnancy with Mario O. and Frank O., "unquestionably endangering the health and safety of her unborn child[ren]." (*Christopher R.*, *supra*, 225 Cal.App.4th at p. 1217.) The juvenile court was also free to disbelieve Mother's retraction of her statement that she had used drugs at the time of Frank O.'s birth, especially when combined with the maternal grandmother's observation of Mother with a glass pipe in her hand within a week prior to CFS intervening and her concerns about Mother's substance use, as well as the maternal great-uncle's concerns about Mother using substances and neglecting the children. Like *Christopher R.*, Mother's use of drugs during two pregnancies, combined with her admitted use of drugs in the past and her failure to consistently test or enroll in a drug

16

abuse program justified the juvenile court's exercise of dependency jurisdiction. (*Christopher R.*, at pp. 1218-1219.)

We conclude that the juvenile court's jurisdictional finding was supported by substantial evidence.

C. *Challenge to the Substance Abuse Treatment Program*

Mother also contends that the juvenile court abused its discretion when it ordered her to participate in a substance abuse program. We disagree.

A juvenile court has the power to make any "reasonable order[]" to the parent of a dependent child that is "appropriate and in the child's best interest" and that is designed to "eliminate [the] conditions that led to the court's finding" of jurisdiction. (§ 362, subd. (d).) We review a juvenile court's findings in support of a particular order for substantial evidence. (*In re T.V.* (2013) 217 Cal.App.4th 126, 136.) We review the court's decision of which orders to impose for an abuse of discretion. (*Drake M.*, *supra*, 211 Cal.App.4th at p. 770.)

Because we affirm the juvenile court's jurisdictional finding, this related challenge fails. The juvenile court's finding that Mother has been abusing drugs was supported by substantial evidence, so its decision to impose a requirement that she attend a substance abuse treatment program was not an abuse of discretion. The drug treatment is directed toward eliminating one of the conditions leading to the court's finding of jurisdiction— Mother's drug abuse. Additionally, Mother's denial of the severity of her drug problem supports a conclusion that treatment will be necessary for sustained recovery. (See *In re Esmeralda B.* (1992) 11 Cal.App.4th 1036, 1044 ["denial is a factor often relevant to

17

determining whether persons are likely to modify their behavior in the future without court supervision"]; see also *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge"].).  As well, Mother does not appear to have completed a drug treatment and relapse prevention program previously.  We see no abuse of discretion.

## IV.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
J.

We concur:

RAMIREZ
P. J.

MENETREZ
J.